John R. Parker, Jr. (SBN 257761)
jrparker@almeidalawgroup.com
**ALMEIDA LAW GROUP LLC**
3550 Watt Avenue, Suite 140
Sacramento, California 95821
Tel: (916) 616-2936

*Attorneys for Plaintiff and the Putative Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MATTHEW FOLDI, *individually and on behalf of all others similarly situated*, | Case No.: |
| Plaintiff, | **CLASS ACTION** |
| v. | **CLASS ACTION COMPLAINT** |
| INSTAGRAM, LLC and META PLATFORMS, INC., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

-1-

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Matthew Foldi, on behalf of himself and all others similarly situated, through undersigned counsel, brings this class action against Instagram, LLC ("Instagram") and Meta Platforms, Inc. ("Meta," and together with Instagram, "Defendants") and alleges, upon personal knowledge as to his own actions and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    This case addresses the surreptitious, non-consensual tracking and disclosure of potentially millions of Instagram users' location by Defendants via the new Instagram "Map" feature which was rolled out by Instagram on August 6, 2025.

2.    For years, Defendants have been collecting vast amounts of sensitive data from their users, including users' location (ostensibly with the users' consent) in order to "personalize and improve our Products, including ads, for you and others" – or to essentially monetize this data for Defendants' profit.[1]

3.    Defendants' Data Policy specifically states that data they collect from users' device settings includes information the user *allows Defendants to receive through device settings the user turns on*, such as access to the user's GPS location, camera, or photos.[2] The Data Policy reiterates that a user's location-related information can be based on precise device location only if the user allowed Defendants to collect it.[3]

4.    Earlier this week, Defendants debuted a new "Instagram Map" tool that details users' geolocation data, pitching the feature as way to "stay up-to-date with friends" by letting users share their "last active location."[4]

---

[1] *See* Defendants' *Data Policy*, https://help.instagram.com/155833707900388.

[2] *See id.* ("Information we obtain from these devices includes: […] **Data from device settings:** information you allow us to receive through device settings you turn on, such as access to your GPS location, camera or photos.")

[3] *See id.* ("**Location-related information:** We use location-related information-such as your current location, where you live, the places you like to go, and the businesses and people you're near-to provide, personalize and improve our Products, including ads, for you and others. Location-related information can be based on things like precise device location (if you've allowed us to collect it), IP addresses, and information from your and others' use of Meta Products (such as check-ins or events you attend).")

[4] *New Features to Help You Connect With Friends* (August 6, 2025), https://about.instagram.com/blog/announcements/instagram-new-features-connect-friends

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

5.      Defendants' announcement reiterates that location sharing will be activated <u>only if the user opts into this feature</u>:

> Stay up-to-date with friends with the Instagram map. ***You can opt into sharing your last active location with friends you pick***, and you can turn it off anytime. You can also open the map to see content your friends and favorite creators are posting from cool spots. No matter how you use the map, you and your friends have a new, lightweight way to connect with each other.
>
> ***Location sharing is off unless you opt in***. If you do share location with friends, you have controls to customize this experience:
>
> • You choose who you share your location with: friends (followers you follow back), Close Friends, Only selected friends, or no one.
>
> • You can choose to not share location in specific places or with specific people.
>
> • If you use location sharing, your location is updated whenever you open the app or return to the app if it's been running in the background. You can turn off location sharing at any time.
>
> • If you're a parent with supervision set up for your teen, you have control over their location sharing experience on the map. You will receive a notification if your teen starts sharing their location, giving you the opportunity to have important conversations about how to safely share with friends. You can decide whether your teen has access to location sharing on the map and see who your teen is sharing their location with.[5]

6.      Instagram assures users that affirmative consent to location sharing is required by having them opt-in into sharing their location, stating in various blogs and posts that when a user first accesses the Instagram Map, their "location is defaulted to off."[6]

7.      However, it appears that these promises are false and certain Instagram users—including Plaintiff—were opted into location sharing via the Instagram Map without their knowledge or consent.

---

[5] *Id*. (emphasis added).

[6] *About sharing your location with others on the Instagram map*, https://help.instagram.com/402343555458995/?cms_platform=iphone-app&helpref=platform_switcher; *see also New Instagram Features to Help You Connect*, Meta (august 6, 2025), https://about.fb.com/news/2025/08/new-instagram-features-help-you-connect/

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

8.      Defendants have failed, and continue to fail, to respect and abide by the very privacy choices they ostensibly extended to their users. Defendants collect, retain, and publish user location data in the Instagram Map without warning and without user consent, under circumstances where no reasonable consumers would expect that to occur. Defendants gather users' location data regardless of whether users opted into sharing their location via the new Instagram Map tool. Despite certain users expressly declining to give Defendants permission to track and disclose a digital record of their movements, Defendants do just that, creating a detailed and encyclopedic chronology of users' movements and storing it in a vastly exploitable, profitable database.

9.      Data concerning consumers' habits, customs and patterns are the super valuable "goods" today, and as geolocation data is particularly rich and personal, it is particularly valuable currency. Defendants derive substantial benefits from location data, including increased revenues from advertising and a competitive advantage across a range of lucrative industries.

10.     The ramifications of unauthorized access to the highly personal details of a person's location history can be severe, from robberies to assault, and individuals accordingly go to great lengths to safeguard not only their own location information, but, in the case of parents and guardians, also that of their minor children.

11.     Defendants' conduct is outrageous and it violates their users' reasonable expectations of privacy. The intent and efforts of privacy- and security-conscious individuals to safeguard their personal information—particularly sensitive location information—must be respected. The Supreme Court confirmed in *Carpenter v. United States*, 138 S. Ct. 2206 (2018) that location data is highly sensitive and presents a privacy interest protected by law. When stored and tracked over time, location history "provides an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations." *Id.* at 2217 (quotation marks and citation omitted). As Chief Justice John Roberts stated, "a cell phone—almost a 'feature of human anatomy[]'—tracks nearly exactly the movements of its owner . . . . A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales," and when a third-party has access to the information stored on one's cell phone, that entity

-4-

"achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* at 2218 (internal citations omitted).

12.     While falsely characterizing their illusory privacy controls as meaningful, Defendants deceptively and unconscionably deprived and continue to deprive Plaintiff and Class Members of one of the most fundamental autonomy and privacy rights: the ability to control access to and knowledge of their whereabouts and their movement over time. This is true not only for Plaintiff and Class Members, but, upon information and belief, also for their children, whose location information they sought to protect. Indeed, recognition and respect for child privacy and parental control are enshrined in longstanding societal norms and protected by the law.

13.     The risks of sharing someone's location without their consent are many, from home robberies to stalking and physical assault. Just earlier this week hackers leaked users' data from the Tea Dating Advice app ("Tea"), a platform meant to give women a safe space to share information about dangerous men.

14.     Online trolls on a notoriously misogynistic message board 4Chan claimed to have sourced the metadata included in the photos and used it to make a map of Tea subscribers' locations.[7] Someone created a site for comparing and ranking the users' physical appearances, and posters across social-media platforms began sharing Tea users' images, insulting the women's appearances and stating that "they deserved all of this."[8]

15.     The data leak did not stop at 4Chan, with users of X Corp.'s platform (formerly Twitter) amplifying the breach, creating searchable databases linking women's real identities to their anonymous posts. "The drivers licenses leaked today from the tea app have been uploaded to a searchable map. . . this may be the worst PII Leak I've ever seen lol," one such X user posted.

---

[7] *Tea encouraged its users to spill. Then the apps' data got leaked*, Culture (August 2, 2025), https://www.npr.org/2025/08/02/nx-s1-5483886/tea-app-breach-hacked-whisper-networks.

[8] *First Came Tea. Then Came the Male Rage*, The Atlantic (July 30, 2025), https://www.theatlantic.com/family/archive/2025/07/tea-app-dating-data-breach-misogyny/683712/

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

16.     As a result of this breach, the Tea app, which meant to be protecting vulnerable women from abusers, serial cheaters and sexual predators, became a weapon in the hands of those who want to do these women harm.

17.     Similar dangers and risks exist anytime individuals' location is disclosed without their consent, even with 'good intentions' in mind. The risks may be even greater for younger social media users, who may be targeted by a slew of nefarious criminals, including sexual predators and drug dealers.

18.     Plaintiff Matthew Foldi brings this class action lawsuit on behalf of himself and a class of persons impacted by Instagram's and Meta's failure to safeguard, monitor, maintain and protect highly sensitive personal information such as their location information, without consent.

**19.**     Plaintiff asserts claims for (i) Intrusion upon Seclusion; (ii) Breach of Implied Contract; (iii) Unjust Enrichment; (iv) Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. and (v) Declaratory Judgment.

## PARTIES

20.     Plaintiff Matthew Foldi is, and at all times relevant hereto was, an adult citizen of the State of Maryland.

21.     Defendant Instagram, LLC is a Delaware corporation with its principal place of business at 1 Meta Way, Menlo Park, California 94025.

22.     Defendant Meta Platforms, Inc. is a Delaware corporation with its principal place of business at 1 Hacker Way, Menlo Park, California 94025.

23.     Defendant Meta acquired Defendant Instagram for $1 billion in April 2012.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (a) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (b) members of the proposed class including Plaintiff are citizens of states different from Defendants; and (c) the number of proposed Class Members exceeds 100.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1    25.    This Court has personal jurisdiction over Defendants because they maintain their

2    principal places of business in this District and have sufficient minimum contacts with this District.

3    Defendants expressly consent to the jurisdiction of the U.S. District Court for the Northern District

4    of California or a state court of San Mateo County, California, through their Terms of Use and

5    Terms of Service.[9]

6    26.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part

7    of the events or omissions giving rise to the claims occurred in this District, and Defendants

8    maintain their principal places of business and conduct substantial business in this District. Pursuant

9    to Local Rules 3.2(c) and 3.5(b), Plaintiff Foldi further states that assignment to the San Francisco

10   Division of this Court is proper under Civil L.R. 3-2(d) because Defendants' principal places of

11   business are in San Mateo County and many of the events at issue in this lawsuit occurred in San

12   Mateo County.

13                              **CHOICE OF LAW**

14   27.    California law governs the substantive legal issues in this case. Defendants' Terms

15   of Use and Terms of Service provide in pertinent part that California law will apply to any disputes

16   arising out of or relating to Defendants' terms or services.[10]

17                        **COMMON FACTUAL ALLEGATIONS**

18   **A.  Defendants Falsely Assured Certain Instagram Users That Their Consent Is Needed
         to Enable Location Sharing via Instagram Map**

19

20   28.    According to a 2024 report by the Pew Research Center, the vast majority of

21   Americans—98%—own a cellphone; 91% of Americans own smartphones.[11]

22   29.    In May 2025, there were 172 million Instagram users in the United States,

23   accounting for about 50% of its entire population.[12]

---

24   [9] *See* Instagram, *Terms of Use*, https://help.instagram.com/581066165581870/; *see also Terms of
     Service*, Meta, https://www.facebook.com/terms/

25   [10] *Id.*

26

27   [11] Pew Research Center, *Mobile Fact Sheet* (November 13, 2024),
     https://www.pewresearch.org/internet/fact-sheet/mobile/

28

                **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

30.    Plaintiff and Class Members are current Instagram users who signed up for and used Instagram services at the time when Instagram Map came out, and whose location was shared in Instagram Map without their consent.

31.    Defendants affirmatively represented to Instagram users—through their publications, terms of service and terms of use, blogs, Instagram Map announcements and other disclosures—that they would maintain that information in strict confidence and employ reasonable safeguards to protect it. Specifically, and as described above, Defendants' announcements and policies concerning the new Instagram Map and sharing of users' locations falsely assured users that their location sharing will be activated only if the user opts into this feature.[13]

32.    Instagram assured users in several publications that affirmative consent to location sharing is required by having them opt in into sharing their location, stating in various blogs and posts that when a user first accesses the Instagram Map, their "location is defaulted to off."[14]

33.    Given the highly sensitive nature of the information they collect, particularly users' location data, Defendants are obligated to (a) keep users' location data confidential; (b) follow industry-standard data-security practices; (c) inform users of their data-security duties; (d) comply with all applicable federal and state privacy laws; (e) use or disclose the data only for legitimate purposes; and (f) provide prompt notice of any unauthorized disclosure.

34.    By obtaining and benefiting from Plaintiff's and Class Members' location information, Defendants assumed legal and equitable duties to protect that data from unauthorized access or disclosure.

---

[12] NapoleonCat, *Instagram users in United States of America*, https://napoleoncat.com/stats/instagram-users-in-united_states_of_america/2025/05/

[13] *Id.* (emphasis added).

[14] *See, e.g., About sharing your location with others on the Instagram map*, https://help.instagram.com/402343555458995/?cms_platform=iphone-app&helpref=platform_switcher; *see also New Instagram Features to Help You Connect*, Meta (august 6, 2025), https://about.fb.com/news/2025/08/new-instagram-features-help-you-connect/

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

35.    Plaintiff and Class Members reasonably relied on Defendants to maintain their location data securely and to disclose it only as authorized. Defendants ultimately failed to honor these duties.

36.    Defendants' representations were false, as they did not use reasonable security procedures and practices appropriate to the nature of the personally identifiable and sensitive information they are maintaining for Plaintiff and Class Members, causing the exposure of their location data without their consent.

37.    Contrary to Defendants' representations, Defendants captured and disclosed location information of certain Instagram users, such as Plaintiff and Class Members, in the Instagram Map feature, without their knowledge or consent.

38.    Defendants' secretive location tracking, storage and location disclosure practices are not only deceptive and unethical, they are directly contrary to users' reasonable expectations of privacy.

**B. Defendants' Unauthorized Disclosure of Location Data Exposed Plaintiff and Class Members to Significant Risk of Various Harms**

39.    The location information stored by Defendants in violation of their representations and Class members' permissions is personally identifying, in and of itself.

40.    Here, because users' location information in the Instagram Map is tied to their Instagram accounts, anyone who is subscribed to the user's account can access their location.

41.    For users with public accounts, anyone can follow them without having to be approved as a friend.

42.    Defendants were well aware that the location data they collect is highly sensitive and of significant value to those who would use it for wrongful purposes including identity theft, harassment, stalking, cyberbullying, and even robberies and assault.

43.    Defendants also knew that unauthorized disclosure of Instagram users' location data would result in the increased risk of harassment, various crimes including robberies and assault, and targeted, individualized surveillance by third parties of the individuals whose location data was

compromised. As reporting in the *New York Times* and other news outlets demonstrates, the issues presented in this action are of serious concern to anyone with a smartphone:

> granular location data - the kind that is collected by hundreds of mobile apps and then shared with dozens of location data brokers-may seem like a catalog of the mundane. But the aggregate is closer to total surveillance - an exact record of the rhythms of a living, breathing community.[15]

44.     These data points become a diary of sorts, revealing visits to places of worship, medical appointments, work, home, and vacation locations, and other places a regular person considers sensitive and private.

45.     This data collection has grave implications for American's right to privacy. For example, the entities using our data include "banks, credit agencies, insurance firms, internet service providers, predatory loan companies, online advertisers, U.S. law enforcement and security agencies, and perpetrators of domestic violence—not to mention the foreign governments, criminals, terrorist organizations, and violent individuals that could potentially acquire the data."[16]

46.     The collection and storage of users' geolocation data itself violated users' reasonable expectations of privacy, and also puts them at increased risk for further privacy violations.

47.     Location data is one of the most sensitive categories of our personal information, along with, for example, genetic and health data.[17]

48.     Personally identifiable information such as location data has considerable value and constitutes an enticing and well-known target to hackers, who can easily sell stolen data or use it for harassment and extortion purposes to other nefarious actors.

49.     These risks are not merely theoretical; in recent years, numerous high-profile data breaches have occurred at technology companies and applications, particularly those handling

---

[15] Charlie Warzel and Stuart A. Thompson, *Where Even the Children Are Being Tracked*, New York Times (December 21, 2019),
https://www.nytimes.com/interactive/2019/12/21/opinion/pasadena-smartphone-spying.html
[16] Justin Sherman, *Data Brockerage and Threats to U.S. Privacy and Security*, 3 (U.S. Senate Committee on Finance, Subcommittee on Fiscal Responsibility and Economic Growth, Hearing on "Promoting Competition, Growth, and Privacy Protection in the Technology Sector") (December 7, 2021), https://www.finance.senate.gov/imo/media/doc/Written%20Testimony%20-%20Justin%20Sherman.pdf
[17] *See id.* at 1.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

sensitive user information. The prevalence of data breaches and identity theft has increased dramatically in recent years. In 2023 alone, data breaches in the United States increased by 78% over 2022, reaching 3,205 reported breaches.[18]

50.     Social media applications have become prime targets for threat actors due to the sensitive nature of the data they store, including personal information that can be used for extortion and harassment.

51.     In summary, the harms of data collection, especially location data, are many and are well-documented. Abusive individuals have used people's data such as their addresses, vacation and other information, "to hunt down and stalk, intimidate, harass, and even murder individuals trying to escape them. . . GPS location data companies have secretly tracked citizens attending protests and demonstrations and identified their ages, genders, ethnicities, and other sensitive demographic characteristics—all of which they can legally sell."[19] And U.S. federal agencies have been known to purchase data from data brokers (without warrants, public disclosures, or robust oversight) to carry out everything from criminal investigations to deportations.

52.     Based on the value of their users' PII such as location data to cybercriminals and a myriad of other individuals and entities, Defendants certainly knew the foreseeable risk of capturing and disclosing Instagram users' location data without their knowledge or consent.

53.     Acknowledging that users view their location data as highly sensitive, Instagram's launch announcement of its Map feature included many assurances that users have complete control over deciding to display their location, including an informational video, that promised users had to opt-in into sharing their location.

54.     As described herein, despite these assurances, on August 6, 2025 when Defendants launched the Instagram Map, certain users including Plaintiff and Class Members, woke up to find out that their location was already being shared with other Instagram users, without their consent.

---

[18] Identity Theft Resource Center, *2023 Annual Data Breach Report* (2024), https://www.idtheftcenter.org/publication/2023-annual-data-breach-report/ (last visited August 7, 2025).
[19] Sherman, *supra*, note 16, at 3.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

55.    Upon information and belief, despite Defendants' presentations of the Instagram Map as a tool to connect with friends, Defendants collected this location data in order to monetize it and utilize it to target advertise users including Plaintiff and Class Members.

C.    **Defendants' Conduct is an Egregious Invasion or Personal Privacy, Personal Security, and Personal Dignity**

56.    Each of the following acts defy social norms and invade reasonable privacy expectations: tracking, disclosing, and storing detailed location information in the Instagram Map contrary to users' consent, affirmatively misleading users regarding their ability to opt out. Upon information and good faith belief, Defendants store the history of users' locations in perpetuity and fail to disclose this information.

57.    Normally, mobile device and Internet users such as Plaintiff are able to control the flow of sensitive information about themselves through "settings" and "permissions" that they grant, or withhold, from third parties, particularly private parties such as Instagram and Meta.

58.    Plaintiff's and Class Members' expectations that those settings and permissions would be heeded and effective, and that they could travel without creating a record of their movements, are eminently reasonable.

59.    Defendants falsely represented to Plaintiff and Class Members that they would not capture, store and disclose their location information without consent, thus creating the false impression that Class Members could use Instagram's services in a privacy-protective manner.

60.    Plaintiff and Class Members took specific steps to protect their privacy and personal security, and made reasonable efforts to stop Defendants from capturing, storing and displaying information regarding their whereabouts and day-to-day activities. Based on Defendants' representations and omissions, context, and industry norms, they expected Defendants to heed and follow their instructions and, as a result, expected that their whereabouts would be private unless they opted into sharing their location with Instagram's Map (and likely stored indefinitely on Defendants' systems). Those reasonable expectations were consistent with sentiments that are widely shared in American society and elsewhere, and grounded in long-standing social norms and jurisprudence protecting privacy.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

61.    The Supreme Court specifically recognized the reasonable expectation of privacy a person has in the location information generated by their cell phone, in *Carpenter v. United States*, 138 S. Ct. 2206 (2018).

62.    As observed by the Supreme Court in *Carpenter*, a smartphone, tablet, or other mobile device is a constant in many people's lives. Indeed, an Internet-connected digital device is a pre-requisite for modern life, necessary for the full continuum of daily activities, from work to commerce to communication (both professional and personal) to obtaining basic government services. Because of the indispensable nature of connected devices to the entire spectrum of daily life, many Americans carry their mobile devices everywhere they go, including Plaintiff.

63.    In light of the ubiquity of Internet-enabled mobile devices, and in light of those same devices' capacity for near perfect surveillance, society unequivocally has embraced the need to secure and enforce the right of all people to determine for themselves when, and to what extent data produced by these devices regarding peoples' lives and activities will be shared, cataloged, and analyzed.

64.    By collecting and storing location data without consumers' awareness or consent, Defendants have violated social norms that are firmly established in American culture and law.

65.    There have been numerous class actions and lawsuits against data brokers, including Google, alleging that surreptitious collection of location constitutes willfully deceptive and unfair acts and practices, that resulted in multi-million settlements.[20]

66.    The importance of user controls over privacy settings has also been acknowledged by federal lawmakers, as well as governments and courts outside of the United States, and even data brokers themselves.

67.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines

---

[20] *See, e.g.*, *Attorney General Bonta Announces $93 Million Settlement Regarding Google's Location-Privacy Practices* (September 14, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-93-million-settlement-regarding-google%E2%80%99s

identifying best data security practices that businesses—like Defendants—should use to protect against unlawful data exposure.

68.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[21]  The FTC declared that, *inter alia*, businesses must:

> a.   protect the personal customer information that they keep;
>
> b.   encrypt information stored on computer networks;
>
> c.   understand their network's vulnerabilities; and
>
> d.   implement policies to correct security problems.

69.     Furthermore, the FTC explains that companies must limit access to sensitive data and use industry-tested methods for security.

70.     The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

71.     In short, Defendants' failure to use reasonable and appropriate measures to protect against unauthorized disclosure of Instagram users' location data via the Instagram Map constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

## REPRESENTATIVE PLAINTIFF'S EXPERIENCE

72.     Plaintiff Foldi has had an Instagram account under his real legal name since approximately 2013. His account has been public for at least five years.

73.     Defendants collected and stored Plaintiff's sensitive information including his location data, at the time they rolled out the Instagram Map on August 6, 2025.

---

[21] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016),  https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited August 13, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

74. Due to the nature of Plaintiff's employment, he travels and posts stories frequently on his Instagram account.

75. Plaintiff is very careful about sharing his sensitive personal data, including his location information, because of his work and his past occupation as a former elected official.

76. Given the sensitive nature of his job, Plaintiff endeavors not to post 'geotagged' stories with his exact location, for safety reasons. Plaintiff believes that on certain occasions disclosing his exact location can lead to extremely negative consequences for himself.

77. On or about August 8, 2025, Plaintiff was shocked to find out that his location was being shared by the new Instagram Map feature without him having opted into sharing his location by the Map.

78. To make matters worse, Plaintiff learned that his location was being shared without his consent not from Instagram, but from a friend who had inquired whether Plaintiff has opted into this feature.

79. Plaintiff did not receive any notifications from Instagram informing him that Instagram Maps will be sharing his location, and had not opted into sharing his location via the Instagram Map when he was informed that his location was visible on the Map.

80. Plaintiff is extremely concerned about the risks to his privacy, as well as of that of Class Members, including potential criminals using this information to commit a wide range of crimes, from robberies to kidnappings, physical assault, and murder.

81. Plaintiff would not have entrusted his sensitive data including his location information, to Instagram had he known of Instagram's lax data security policies.

82. Plaintiff made reasonable efforts to mitigate the impact of the disclosure of his sensitive location information, including researching the Instagram Map features and not opting into sharing his location information on the Instagram Map. Plaintiff has spent significant time dealing with the disclosure of his location data by Defendants—valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

83.     Plaintiff suffered actual injury from having his location data compromised as a result of it being disclosed via the Instagram Map including, but not limited to: (i) invasion of privacy; (ii) theft of his sensitive personal data; (iii) lost or diminished value of sensitive personal data; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of unauthorized disclosure of his location data; (v) loss of benefit of the bargain; (vi) anxiety about potential harassment or stalking using his location; (vii) the continued and certainly increased risk to his sensitive location data, which remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect this data.

84.     Plaintiff has a continuing interest in ensuring that his location data, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future unauthorized disclosures.

## **CLASS ACTION ALLEGATIONS**

85.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.

86.     Plaintiff seeks to represent the Nationwide Class which is defined as follows:

> All Instagram users residing in the United States whose location data appeared on the Instagram Map without them completing the opt-in process (the "Class").

87.     The following people are excluded from the Class: (i) any judge or magistrate presiding over this action and members of their families; (ii) Defendants, Defendants' subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendants or their parent has a controlling interest, and their current or former officers and directors; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendants' counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

88.     **Numerosity**: The exact number of members of the Class is unknown but it is estimated to number in the hundreds of thousands, and individual joinder in this case is

impracticable. Members of the Class can be easily identified through Defendants' records and non-party records.

89.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class. Plaintiff, like all the members of the Class, did not opt into sharing his location on the Instagram Map, and sustained damages arising out of Defendants' wrongful conduct and misrepresentations, false statements, concealment, and unlawful practices. Plaintiff and the Class Members did not consent to Defendants' capture and disclosure of their location information on Instagram Map. Plaintiff and members of the Class sustained similar injuries and damages, as a result of Defendants' uniform illegal conduct. Moreover, like all Class Members, Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff continues to use his mobile device and his Instagram account, that are capable of reporting his location data to Defendants. Defendants have shown deliberate indifference to Plaintiff's and Class Members' lack of consent

90.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

91.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a.   Whether Defendants engaged in the wrongful conduct alleged herein;

b.   Whether Defendants' collection, storage, use of, and disclosure of Plaintiff's and Class Members' location data violated privacy rights and invaded Plaintiff's and Class Members' privacy; and

c.   Whether Plaintiff and members of the Class are entitled to restitutionary, injunctive, declaratory, equitable, or other relief.

92.    **Superiority**: This cause is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this

-17-

controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

93.    A class action is superior to individual litigation because:

a.    The amount of damages available to an individual plaintiff is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of The Class action procedural device;

b.    Individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and

c.    The class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

94.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and the user accounts affected by the unauthorized disclosure of users' location information in the Instagram Map.

**CAUSES OF ACTION**

**COUNT I**
**Intrusion Upon Seclusion**
*(On Behalf of Plaintiff & the Class)*

95.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

90.    Plaintiff and Class Members have reasonable expectations of privacy in their mobile devices and their online behavior, generally. Plaintiffs' and Class Members' private affairs include their locations.

91.    The reasonableness of such expectations of privacy is supported by Defendants' unique position to monitor Plaintiff's and Class Members' behavior through their access to Plaintiff's and Class Members' private mobile devices and Instagram user accounts. It is further supported by the surreptitious and non-intuitive nature of Defendants' tracking.

92.    Defendants intentionally intruded on and into Plaintiff's and Class Members' solitude, seclusion, or private affairs by intentionally and comprehensively tracking and disclosing their locations and movements, without their consent.

92.    These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, Supreme Court precedent, legislation enacted by Congress and the California legislature, rules promulgated and enforcement actions undertaken by the FTC, petitions and litigation initiated in the United States and abroad, countless studies, op-eds, and articles decrying location tracking, and Defendants' own statements. Moreover, Defendants are engaging in true tracking of location information deceptively and in direct contradiction of lack of opt-in from Plaintiff and the members of the Class. Also supporting the highly offensive nature of Defendants' conduct is the fact that Defendants' principal goal was to surreptitiously monitor Plaintiff and Class Members.

93.    Plaintiff and Class Members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

94.    Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Class Members.

-19-

95.     As a result of Defendants' actions, Plaintiff and Class Members seek damages and punitive damages in an amount to be determined at trial. Plaintiff and Class Members seek punitive damages because Defendants' actions—which were malicious, oppressive, and willful— were calculated to injure Plaintiff and Class Members and made in conscious disregard of Plaintiff's and Class Members' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## COUNT II
### Breach of Implied Contract
### *(On Behalf of Plaintiff & the Class)*

96.     Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

96.     Plaintiff brings this cause of action in the alternative to Count Three.

97.     Defendants required Plaintiff and Class Members to provide and entrust their sensitive data including location, as a condition of obtaining services from Defendant Instagram.

98.     Defendants made promises that Plaintiff's and Class Members' location data would only be shared with others if Plaintiff and Class Members opted into sharing it with the Instagram Map, by following specific steps outlined by Defendants in their instructions and representations to Instagram users.

99.     Defendants had implied duties of good faith to ensure that the location data of Plaintiff and Class Members in their possession was used only as authorized.

100.    Defendants had implied duties to protect Plaintiff's and Class Members' location data from unauthorized disclosure or uses.

101.    Through their course of conduct, Defendants, Plaintiff and Class Members entered into implied contracts for Defendants to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' location data.

102.    Defendants solicited and invited Plaintiff and Class Members to provide their location as part of Defendants' regular business practices. Plaintiff and Class Members accepted Defendants' offers and provided their location to Defendants.

103.    Plaintiff and Class Members fully performed their obligations under the implied contract with Defendants. Defendants did not. Plaintiff and Class Members would not have provided their location data to Defendants in the absence of their implied contracts with Defendants and would have instead retained the opportunity to control their location data for uses other than obtaining benefits and services from Defendants.

104.    Defendants breached the implied contracts with Plaintiff and Class Members by failing to safeguard and protect Plaintiff's and Class Members' location data; failing to provide timely and accurate notice to Plaintiff and Class Members that their location was disclosed as a result of the Instagram Map launch; and violating industry standards as well as legal obligations that are necessarily incorporated into implied contracts between Plaintiff, Class Members, and Defendants.

105.    Defendants' failures to meet these promises constitute breaches of the implied contracts.

106.    Furthermore, the failure to meet their confidentiality and privacy obligations resulted in Defendants providing services to Plaintiff and Class Members that were of a diminished value.

107.    Defendants' acts and omissions have materially affected the intended purpose of the implied contracts requiring Plaintiff and Class Members to provide their location data in exchange for services.

108.    As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and Class Members have suffered (and will continue to suffer):

    a.   ongoing, imminent, and impending threat of harassment, stalking, and abuse, resulting in monetary loss and economic harm;

    b.   loss of the confidentiality of their sensitive location data;

    c.   the possibility of an illegal sale of the disclosed location data on the internet; and

    d.   other economic and non-economic harm.

109.    As a direct and proximate result of Defendants' above-described breach of contract, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

**COUNT III**
**Unjust Enrichment**
*(On Behalf of Plaintiff & the Class)*

110. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

111. This claim is pleaded solely in the alternative to Plaintiff's breach of implied contract claim in count two.

112. Plaintiff and Class Members unwittingly conferred a monetary benefit on Defendants. Defendants took and retained valuable personal location information belonging to Plaintiff and Class Members when Defendants intentionally and comprehensively captured and disclosed their locations and movements without their consent.

112. Defendants have knowledge of such benefits.

113. Defendants have been unjustly enriched when they utilized Plaintiff's and Class Members' location data, stored and disclosed without consent, for Defendants' own financial advantage to optimize Instagram's advertising powers and to build, maintain and improve Instagram services.

114. In exchange for Plaintiff's and Class Members' loss of privacy and the financial and other benefits Defendants enjoyed as a result thereof, including but not limited to, advertising profits, Plaintiff and Class Members received nothing.

115. Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendants acquired the monetary benefit and location data through inequitable means in that Defendants failed to disclose the inadequate security practices, as described herein, and failed to obtain the consent of Plaintiff and Class Members before disclosing their location information on the Instagram Map.

116. Plaintiff and Class Members have no adequate remedy at law for this claim. Plaintiff pleads his claim for unjust enrichment in the alternative to any other claims he may plead, which inherently would necessitate a finding of no adequate remedy at law. Alternatively, legal remedies

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 204 (1937).

117.   Furthermore:

a.   To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

b.   Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks such relief here.

c.   Legal claims for damages are not equally certain as restitution because claims under unjust enrichment entail few elements.

d.   A claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law. Restatement (Third) of Restitution, § 4(2).

118.   Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds they received as a result of their conduct and the unauthorized disclosure of Plaintiff's and Class Members' location data via the Instagram Map, as alleged herein.

### COUNT IV
**California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
***(On Behalf of Plaintiff, the Class & the General Public)***

119.   Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

-23-

120.    Defendants are "persons" defined by Cal. Bus. & Prof. Code § 17201.

121.    Defendants' principal places of business and their principal officers are in this District, and Defendants' unlawful conduct alleged herein emanates from California.

122.    As described in this Complaint, Defendants' terms of service provide for application of California law to any disputes arising out of or relating to Defendants' terms or services.

123.    Defendants violated Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

124.    Defendants' "unfair" acts and practices include:

    a.   Defendants failed to implement and maintain reasonable security measures to protect Plaintiff's and Class Members' personal information from unauthorized disclosure and release. Defendants failed to identify foreseeable security risks related to disclosing Instagram users' location, remediate identified security risks, and adequately improve security especially given previous incidents involving unauthorized collection and disclosure of users' location information by data brokers;

    b.   Defendants' failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act (15 U.S.C. § 45) and California's Consumer Privacy Act (Cal. Civ. Code § 1798.150);

    c.   Defendants' failure to implement and maintain reasonable security measures also led to substantial consumer injuries and significant risk of imminent harm, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Defendants' inadequate security, and were actually assured by Defendants that their location data will only be shared if they opted into

sharing their location on the Instagram Map, consumers could not have reasonably avoided the harms that Defendants caused; and

125.    Defendants have engaged in "unlawful" business practices by violating multiple laws, including the FTC Act, 15 U.S.C. § 45, and California common law.

126.    Defendants' unlawful, unfair, and deceptive acts and practices include:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' location information, which resulted in its unauthorized disclosure via the Instagram Map;

b.  Failing to identify foreseeable security and privacy risks of collecting and disclosing Instagram users' location data without their consent, and remediate identified security and privacy risks of collecting and disclosing location data, which was a direct and proximate cause of the disclosure of Plaintiff's and Class Members' location via the Map;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' location information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

d.  Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Class Members' location information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' location information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.  Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiff's and Class Members' location information; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and

privacy of Plaintiff's and Class Members' location information, including

duties imposed by the FTC Act, 15 U.S.C. § 45.

127. As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, an increased, imminent risk of harm including cyberstalking, harassment, and assault, and loss of value of their personal information.

128. Defendants' violations were, and are, willful, deceptive, unfair, and unconscionable.

129. Plaintiff and Class Members have lost money or property as a result of Defendants' conduct in violation of the UCL, as stated herein and above.

130. By deceptively storing, collecting, and disclosing their location information, Defendants have taken money or property from Plaintiff and Class Members.

131. Plaintiff and Class Members would not have provided their location information to Defendants if Plaintiff and Class Members had known that Defendants' data security measures were inadequate to protect their Private Information.

132. Defendants acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and Class Members' rights.

133. Pursuant to *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017), Plaintiff seeks public injunctive relief on behalf of himself, the general public, and members of the putative class, enjoining Defendants from engaging in the unlawful and unfair business acts and practices alleged herein. The primary purpose and effect of the relief sought is to prohibit and prevent Defendants' ongoing and future violations of California law, and such relief will benefit the general public by protecting the privacy rights of all consumers, whether or not they are members of the proposed class.

134. Plaintiff and Class Members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices or use of their location information; declaratory relief; reasonable attorneys' fees

and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

**COUNT V**
**Declaratory Judgment**
*(On Behalf of Plaintiff & the Class)*

135. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

136. An actual controversy has arisen and now exists between Plaintiff and Class Members on the one hand, and Defendants on the other, concerning their respective rights and duties with respect to Defendants' capture and disclosure of Plaintiff's and Class Members' location information without their opt-in, and Defendants' data security obligations going forward.

137. Plaintiff and Class Members contend that Defendants' data security measures were and remain inadequate, particularly their policies and standards of conduct concerning collection, maintenance, and disclosure of users' sensitive personal location data, and that Defendants have ongoing duties to implement and maintain reasonable safeguards to protect their users' sensitive data that remains in Defendants' possession.

135. Plaintiff and Class Members further contend that Defendants have not adequately remediated the unlawful and unfair policies that led to Plaintiff's and Class Members' location information being disclosed via the Instagram Map, and that their location data remains at imminent risk of further unauthorized access and disclosure.

136. Defendants have not provided adequate assurances that they has implemented sufficient security measures to prevent future misconduct or that all copies of the location data collected from Plaintiff and Class Members without their consent, have been recovered or destroyed.

137. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and legal relations of the parties to this action.

138. A judicial declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties with respect to:

-27-

    a.   Whether Defendants' current data security measures and policies are adequate to protect Plaintiff's and Class Members' location data from unauthorized disclosure;

    b.   Whether Defendants must submit to regular third-party security audits and assessments;

    c.   Whether Defendants must destroy or return any unnecessary personal information in their possession, particularly location data; and

    d.   Whether Defendants must provide complete and transparent reporting regarding the unauthorized disclosure of Instagram users' location information and remediation efforts.

139.   Plaintiff and Class Members have no adequate remedy at law for Defendants' ongoing failure to implement adequate security measures, making declaratory relief appropriate.

140.   Accordingly, Plaintiff and Class Members seek a declaration of their rights and Defendants' corresponding duties regarding data security practices concerning location data and remediation measures.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Matthew Foldi, on behalf of himself and all persons similarly situated, prays for judgment in his favor and against Defendants Instagram, LLC and Meta Platforms, Inc., and respectfully requests that this Honorable Court enter an order:

A.   Certifying this action as a Class action and appointing Plaintiff as Class Representative and his counsel as Class Counsel;

B.   Granting equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' sensitive location data, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C.   Granting equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer location data collection, storage, and safety;

D.   Granting equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

-28-

E.  Granting injunctive relief requiring Defendants to destroy all data acquired, created, or otherwise obtained from the unlawful capture, storage and disclosure of Plaintiff's and Class Members' location information;

F.  Awarding actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G.  Awarding punitive damages, as allowable by law;

H.  Awarding attorneys' fees and costs under the common fund doctrine, and any other applicable law;

I.  Awarding costs and any other expense, including expert witness fees, incurred by Plaintiff in connection with this action;

J.  Awarding pre- and post-judgment interest on any amounts awarded; and

K.  All such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff, on behalf of himself and the putative Class, hereby respectfully demands a trial by jury on all claims so triable.

Dated: August 13, 2025                    Respectfully submitted,

*/s/ John R. Parker, Jr.*
John R. Parker, Jr. (SBN 257761)
**ALMEIDA LAW GROUP LLC**
3550 Watt Avenue, Suite 140
Sacramento, California 95821
Tel: (916) 616-2936
jrparker@almeidalawgroup.com

Elena A. Belov*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Ave.
Chicago, Illinois 60614
Tel.: (708) 437-6476
elena@almeidalawgroup.com

-29-

*Pro hac vice application forthcoming*

*Attorneys for Plaintiff & the Putative Class*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL